# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| SPRINT NEXTEL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CASE NO.:  2:11-cv-15431 |
| IBUY EXPRESS INC., WHOLESALE | § | |
| EXPRESS, INC., ATHIR ORAHA PATTO, | § | |
| NADINE MAWFEK PATTO, KOSAI SALIM | § | |
| SHAMOON, TROY PATRICK HAGGARD, | § | |
| JOSHUA MICHAEL HAGGARD, TAREK | § | |
| HASSAN BAZZI, and WILLIAM LOUIS | § | |
| JOHNSON, | § | |
| | | |
| Defendants. | | |

_____

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND JURY DEMAND

Plaintiff Sprint Nextel Corporation ("Sprint" or "Plaintiff"), hereby files this Complaint for Damages and Injunctive Relief and sues Defendants iBuy Express Inc., Wholesale Express, Inc., Athir Oraha Patto, Nadine Mawfek Patto, Kosai Salim Shamoon, Tarek Hassan Bazzi, and William Louis Johnson (collectively, "Defendants"), and states as follows:

## INTRODUCTION AND BACKGROUND

1.     This is an action for damages and injunctive relief arising out of Defendants' unlawful scheme to willfully infringe Sprint's rights related to its specially-manufactured wireless telephones designed for use on Sprint's wireless service, including specifically the new Apple iPhone 4S (collectively, "Sprint Phones" or "Phones").

2.     As set forth in greater detail below, Defendants are engaged in, and knowingly facilitate and encourage others to engage in, unlawful business practices involving unauthorized and deceptive bulk purchase and resale overseas of Sprint Phones, theft of Sprint's subsidy investment in the Phones, unlawful access of Sprint's protected computer systems and wireless network, trafficking of Sprint's protected and confidential computer passwords, willfully

infringing Sprint's trademarks, and insurance fraud (collectively, the "Bulk Handset Trafficking Scheme" or the "Scheme").

3.      Defendants perpetrate their Bulk Handset Trafficking Scheme by acquiring large quantities of Sprint Phones from Sprint and/or Sprint authorized dealers, and by soliciting others to purchase Sprint Phones in large quantities for the benefit of Defendants.  Defendants acquire the Sprint Phones with the knowledge and intent that the Phones will not be used on the Sprint wireless network (as required by the Sprint contracts).  Instead, the Phones are trafficked and the vast majority are resold as new overseas where the Phones are not subsidized by wireless carriers (as they are in the United States) and where the Phones are not as readily available.  Defendants are purchasing dozens of Sprint Phones on a near-daily basis and reselling them overseas.

4.      In some cases, Defendants acquire the Sprint Phones with the knowledge and intent that the Phones will be computer-hacked.  The purpose of this hacking, known as "unlocking," is to disable software installed in the Phones by the manufacturers at the request and expense of Sprint, which enables the activation of the Sprint Phones exclusively on Sprint's wireless system.  The purpose of the software is to allow Sprint Nextel to offer the Phones at a discount to the consumer while protecting Sprint's subsidy investment in the Phone.  Upon information and belief, in some cases, the illegally unlocked Phones are trafficked and resold as new by Defendants, at a premium, under the Sprint trademarks – in violation of federal trademark laws under 15 U.S.C. § 1125.

5.      In addition to violating the terms of Sprint's contracts and constituting various torts, Defendants' Bulk Handset Trafficking Scheme is a classic example of unfair competition under Michigan common law because the scheme is predicated on the unauthorized exploitation of Sprint's subsidy investment in its Phones.  By reselling the Phones in foreign countries where wireless providers do not subsidize mobile phones, Defendants are able to sell the Phones at

below-market prices (which are substantially higher than in the United States) and keep the Sprint subsidy for themselves.  Defendants exploit Sprint's subsidy investment in the Phones without incurring any of the costs themselves, thereby unjustly enriching themselves at Sprint's expense.

6.      The Bulk Handset Trafficking Scheme also violates several provisions of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Defendants and their co-conspirators make misrepresentations in order to induce Sprint to activate Phones purchased by the Defendants on Sprint's wireless telecommunications network, thereby providing Defendants unauthorized access to Sprint's protected computer networks.  By bulk purchasing and selling Sprint Phones, Defendants are illegally trafficking in the confidential codes contained in the Phones that allow access to Sprint's protected computer networks, and facilitating the improper access of Sprint's telecommunications network.

7.      Defendants compound their profits from the Scheme by committing insurance fraud.  Upon purchasing the Sprint Phones, Defendants frequently purchase insurance for the Phones through Sprint's Equipment Replacement Program.  Defendants then fraudulently claim that the Phones were lost, stolen, or damaged in order to receive replacement Phones essentially for free.  The Phones (original and replacement) are then sold overseas for substantial profit.

8.      In an effort to prevent the Bulk Handset Trafficking Scheme, among other things, Sprint and its authorized dealers have implemented policies limiting the number of Sprint Phones an individual may purchase on a daily basis.  Defendants and their co-conspirators, through their Bulk Handset Trafficking Scheme, have taken steps to circumvent these policies by, among other things, employing large numbers of "Runners" to make multiple purchases of Sprint Phones on behalf of Defendants and their co-conspirators.

9.     Defendants' conduct, together with that of currently unknown civil and criminal co-conspirators, is causing Sprint to suffer millions of dollars in losses and is causing immediate and irreparable injury to Sprint.

10.     All conditions precedent to filing this action have been performed, waived or excused.

11.     Sprint has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

### PARTIES, JURISDICTION AND VENUE

12.     This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

13.     Sprint Nextel Corporation is a Kansas corporation, with its principal place of business in Overland Park, Kansas.

14.     Defendant iBuy Express Inc. is a Michigan corporation with its principal place of business located at 10185 Telegraph Road, Taylor, Michigan.

15.     Defendant Wholesale Express, Inc. is a Michigan corporation with its principal place of business located at 32969 Hamilton Court #101, Farmington Hills, Michigan.

16.     Defendant Athir Oraha Patto is an individual residing in Michigan and, upon information and belief, is a principal of iBuy Express Inc. and personally engaged in and helped facilitate the improper conduct described herein.

17.     Defendant Nadine Mawfek Patto is an individual residing in Michigan and, upon information and belief, is a principal of iBuy Express Inc. and personally engaged in and helped facilitate the improper conduct described herein.

18.    Defendant Kosai Salim Shamoon is an individual residing in Michigan and, upon information and belief, is the President of Wholesale Express, Inc. and personally engaged in and helped facilitate the improper conduct described herein.

19.    Defendant Troy Patrick Haggard is an individual residing in Michigan and, upon information and belief, is an associate of iBuy Express Inc. and personally engaged in and helped facilitate the improper conduct described herein.

20.    Defendant Joshua Michael Haggard is an individual residing in Michigan and, upon information and belief, is an associate of iBuy Express Inc. and personally engaged in and helped facilitate the improper conduct described herein.

21.    Defendant Tarek Hassan Bazzi is an individual residing in Michigan and, upon information and belief, is an associate at iBuy Express Inc. and helped facilitate the conduct described herein.

22.    Defendant William Louis Johnson is an individual residing in Michigan and, upon information and belief, is an associate at iBuy Express Inc. and helped facilitate the conduct described herein.

23.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 because Sprint's claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. arise under federal law, and because Sprint and Defendants are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest, fees, and costs.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Sprint's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

24.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## SPRINT'S BUSINESS MODEL

25.     Sprint Nextel Corporation and its affiliates offer a comprehensive range of wireless and wireline communications services, bringing the freedom of mobility to consumers, businesses and government users.  Sprint currently serves more than 52 million customers, and is widely recognized for developing, engineering and deploying innovative technologies, including the first wireless 4G service from a national carrier in the United States.  The Sprint companies and affiliates highly value the outstanding business reputation they have worked hard to develop.

26.     Sprint's wireless program enables Sprint customers to choose from a variety of monthly voice and data plans for use on cutting edge devices on the Sprint wireless network, such as the Apple iPhone 4S and other smartphones.  In addition to being available through Sprint online and in its stores, Sprint Phones and wireless service are sold through authorized Sprint dealers around the country.

27.     Sprint's business model is based upon Sprint's ability to deliver an affordable product to its consumers.  Therefore, Sprint subsidizes its customers' acquisition of the Sprint Phones by selling its Phones for substantially less than the Phones cost Sprint.  Sprint recoups this subsidy through profits earned on the sale of Sprint monthly service, which is required to make and receive calls and text messages on, and transmit data through, the Sprint Phones. Sprint is able to offer its Phones to customers at reduced prices only if the Phones are used as intended on the Sprint wireless network.

28.     Sprint has made a significant investment for its customers in the smartphone market.  Indeed, The Wall Street Journal reported in early November 2011 that Sprint had agreed to buy 30.5 million iPhones over the next four years, paying $20 billion for the bundle.

29.     Manufacturers that produce wireless phones for Sprint install proprietary software, requested and paid for by Sprint, into the Sprint Phones.  Among other things, this software prevents Sprint Phones from being used outside the Sprint network.

30.     In the wireless telecommunications industry, there are two main competing network technologies worldwide: Global System for Mobile Communications ("GSM") and Code Division Multiple Access ("CDMA").  The Sprint wireless network is based on the CDMA platform, which is also used by other wireless providers throughout the world.  Other wireless carriers in the United States and around the world use the GSM technology.  CDMA and GSM technologies are not interoperable, meaning phones with CDMA technology will not operate on GSM networks and vice-versa.

31.     The Apple iPhone 4S sold by Sprint is a "world phone," meaning that it supports both CDMA and GSM technologies.  Prior to November 11, 2011, the iPhone 4S Phones that were made specifically for Sprint were locked to the CDMA Sprint wireless network, but they did not come locked to any particular GSM platform.  Sprint customers could purchase SIM cards when traveling internationally to enable their iPhone 4S Phones to operate on GSM networks in foreign countries.  Defendants' Bulk Handset Trafficking Scheme exploits this feature and profits by reselling Sprint iPhones for use on GSM networks in foreign countries.  On November 11, 2011, Sprint began locking the iPhone SIM to Sprint's network, but Defendants' trafficking has continued unabated.

**SPRINT'S TRADEMARK RIGHTS**

32.     Sprint has the right to use and enforce the standard character marks Sprint, and the stylized Sprint Mark (collectively, the "Sprint Marks"), as depicted below:



Sprint uses the Sprint Marks on and in connection with its telecommunications products and services. The Sprint Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with Sprint.

**TERMS AND CONDITIONS REGARDING
THE USE OF SPRINT PHONES**

33.     Sprint Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones. A copy of the Terms and Conditions is attached hereto as **Exhibit A**. These Terms and Conditions are set forth in printed inserts that are included with the purchase of every Sprint Phone. The Terms and Conditions constitute a valid and binding contract.

34.     Limitations set out in the Terms and Conditions are intended to restrict the use of Sprint Phones to Sprint's wireless network. Among other things, the Terms and Conditions: (a) require that the customer pay his/her monthly service charges and other related fees; (b) require the customer to pay an Early Termination Fee ("ETF") for each line of service that is terminated before the contract term is concluded; (c) indicate that the Phone is designed to be activated on the Sprint CDMA network; (d) prohibit resale of Sprint Phones and related products and services; and (e) prohibit using the Phones for a purpose that could damage or adversely affect Sprint.

8

35.     Pursuant to the Terms and Conditions, Sprint customers may sign up for Sprint's Equipment Replacement Program, which is underwritten by Continental Casualty Company and administered by Asurion Protection Services, LLC.   The Equipment Replacement Program enables customers to purchase insurance to cover the replacement of a Sprint Phone should the Phone be lost, stolen or have certain types of damage.   The Program charges a small monthly premium, and typically requires a $50 or $100 deductible on each claim.

### DEFENDANTS' MISCONDUCT

36.     Sprint has discovered that, although large quantities of its Phones are being purchased throughout the United States, a significant number of these Phones are not being activated for use on the Sprint network.

37.     Instead, entities and individuals such as Defendants and their co-conspirators are purchasing and fraudulently reselling Sprint Phones in bulk quantities.   The Phones are purchased, either directly by Defendants or through their co-conspirators, and then shipped overseas and sold for substantial profits, where they can be used on other wireless carriers' networks.   Other times, entities and individuals such as Defendants are taking the Phones out of their original packaging, remove all accessories, warranties, and manuals, and, upon information and belief, the Phones are shipped overseas and sold.   Defendants undertake these actions for profit, not for the sole purpose of lawfully connecting to the Sprint wireless network.

38.     Once a Sprint Phone is shipped overseas and becomes operable on other wireless networks, Sprint no longer has a revenue source to recoup the invested subsidy on that Phone.

39.     Defendants are knowingly and willfully engaged in an enterprise that traffics in and resells Sprint Phones.   Defendants have purchased and sold large quantities of Sprint Phones through various co-conspirators, and have actively solicited Runners to purchase large quantities of Sprint Phones and to sell those Phones to them and other co-conspirators.

40.     Defendants and their co-conspirators instruct Runners to sign up for Sprint wireless service under false pretenses in order to obtain Phones for resale.  Defendants and their co-conspirators also instruct Runners to ignore and breach their contractual obligations to Sprint under the Terms and Conditions, including their obligations to pay monthly service charges, ETF, and other fees, their obligations to not resell the Phones, and their obligations to use the Phones on Sprint's wireless network.

41.     Defendant iBuy Express, Inc. is currently advertising to buy and sell numerous wireless handsets, including Sprint Phones, through the www.wirelessindustry.com and the www.craigslist.com websites.  Some of these postings contain the Sprint name directly in the advertisements.  Some of these advertisements are attached hereto as **Composite Exhibit B**.

42.     The front of the iBuy Express retail store also uses the "Sprint" name, and advertises that iBuy Express sells iPhones. Photos of the front of the iBuy Express store location are attached hereto as **Exhibit C**.

43.     The iBuy Express retail store is open seven days a week, and stays open until 10 p.m. on Monday through Saturday and 6 p.m. on Sunday.  Many of Defendants' co-conspirator Runners visit their place of business every day to deliver Phones they purchased and to receive cash from Defendants or their agents.  Upon information and belief, Defendants actively solicit these Runners to purchase new Sprint Phones for the Defendants and to do so in breach of the Terms and Conditions.

44.     For example, on November 3, 2011, during just a portion of the business day, approximately 30 individuals were seen entering and exiting the iBuy Express location at 10185 Telegraph Road in Taylor, Michigan.  Of those 30 individuals, approximately 20 were witnessed selling cellular telephones to iBuy Express.  Many of these Runners were seen carrying large

cardboard boxes containing numerous cellular telephones into the store, and walking out with cash.

45.     The following day, November 4, 2011, during a several hour period, another 27 Runners entered the iBuy Express store carrying various amounts of cellular telephones, some in large cardboard boxes and others in large clear plastic trash bags.  Of the 27 Runners who were observed entering the store, 16 sold at least one cellular telephone (but often several more) to iBuy Express and left with cash.

46.     On Saturday, November 5, 2011, another 20 Runners visited the iBuy Express store during a portion of the business day.  Ten of those Runners whom were seen selling cellular telephones to iBuy Express, including telephones in Sprint packaging.  As with the two previous days, many of these Runners were seen carrying boxes or large clear plastic trash bags filled with phones into the store, and leaving with cash.

47.     On Wednesday, November 9, 2011, another 15 Runners visited the iBuy Express store to sell cellular telephones to iBuy Express, including telephones in Sprint packaging.  Again, many of these Runners were seen carrying boxes or large clear plastic trash bags filled with phones into the store, and leaving with cash.

48.     Also on November 9, 2011, a private investigator retained by Sprint sold a new Sprint iPhone 4S to Defendant iBuy Express for $640 – more than three times the Sprint retail price.  Defendants were specifically interested in purchasing "Sprint" iPhone 4s models, and indicated that they were paying the most for Sprint iPhones because they could re-sell them for substantial amounts – potentially upwards of $1,000 or more – overseas.  The investigator specifically asked what he should do about the ETF and other fees owed to Sprint on the account he opened to purchase the Phone he sold to iBuy Express.  An iBuy Express employee told him

he should ignore his contractual obligations to Sprint under the Terms and Conditions, saying "No worries, they never bother anybody."

49.     Before iBuy Express would pay Sprint's investigator for the iPhone, the iBuy Express employee carefully examined the iPhone, turned it on, and performed various tests to confirm that the iPhone had been activated on Sprint's wireless network and that the various electronic code numbers and access numbers loaded on the iPhone were correct.

50.     During the transaction, the investigator asked for more information about how Sprint Phones are acquired for sale to iBuy Express, and the iBuy Express employee indicated that a person named "Will" could tell the investigator how to acquire more Phones.   The employee gave the investigator Will's phone number with instructions to tell Will that iBuy was the referring source.   The employee indicated that Will had his own secrets about acquiring iPhones and had his own vendors.   The person identified as "Will" is Defendant William Louis Johnson.

51.     Thereafter, Sprint's investigators contacted Defendant Johnson, and set up a meeting to sell a second Sprint iPhone to iBuy Express through Defendant Johnson.   On November 17, 2011, Sprint's investigators met Defendant Johnson in or around the iBuy Express parking lot.   Defendant Johnson entered the iBuy Express store alone, spoke with an employee at iBuy Express, and then exited the store.   After Defendant Johnson exited the store, Sprint's investigator suggested that they both go inside the store to complete the transaction, but Defendant Johnson said that he wanted to conduct the transaction outside.   Sprint's investigator then sold a new Sprint iPhone 4S to Defendant Johnson for $450.   Thereafter, Sprint's investigators witnessed Defendant Johnson go back inside the iBuy store and sell the same iPhone to iBuy Express.   Upon information and belief, Defendants purchased the Phone to re-sell it overseas.

52.     On December 7, 2011, Defendant Johnson purchased another Sprint iPhone 4S (32G) Phone from Sprint's private investigators.

53.     Defendant Johnson also provided Sprint's investigator with information on another aspect of Defendants' Scheme involving insurance fraud.  Defendant Johnson explained that when he and the other Defendants or their Runners purchase cellular telephones – often five at a time – from Sprint, they also enroll the Phones in Sprint's Equipment Replacement Program and make a fraudulent insurance claim in order to receive additional replacement Phones from Sprint.  All of the Phones obtained by Defendants and their co-conspirators from Sprint – both the Phones fraudulently purchased and the Phones obtained through the fraudulent insurance claims - were ultimately resold by Defendants or their co-conspirators for use overseas at a substantial profit.

54.     Defendant Wholesale Express recently offered to sell 1,600 brand new Sprint Phones through an email advertisement with a contact phone number that is listed in the name of Defendant Kosai Salim Shamoon, Wireless Express' owner and principal.  Defendant Wholesale Express owns the property where the iBuy Express retail store is located, has a landline phone registered to the iBuy Express location and, upon information and belief, is also involved in the improper bulk purchasing and sale of mobile wireless telephones.  Sprint's private investigators have witnessed Sprint Phones at the Wholesale Express location in Farmington Hills, Michigan.

55.     Each of the individual Defendants, Athir Oraha Patto, Nadine Mawfek Patto, Kosai Salim Shamoon, Troy Patrick Haggard, Joshua Michael Haggard, Tarek Hassan Bazzi, William Louis Johnson, is personally involved in perpetrating one or more aspects of the Bulk Handset Trafficking Scheme as described herein.

## SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT

56.     Defendants' actions substantially harm Sprint by depriving Sprint of the opportunity to recoup its subsidies on the sale of its Sprint Phones and to earn profits by providing wireless service to legitimate Sprint consumers.  Indeed, the iPhones being trafficked by Defendants are especially problematic for Sprint.  As noted above, the iPhones is an iconic product, especially for Sprint.  Sprint invested a significant amount of effort and time in securing rights to sell the iPhone, and has staked a significant amount of its business on the iPhone brand. *See, e.g.* **Exhibit D** attached hereto (recent newspaper articles discussing the iPhone).  Thus, Sprint's request for relief in this case is an urgent business issue.

57.     The conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful bulk purchasing and sale of Sprint Phones has also resulted in shortages of available Sprint Phones, thereby substantially harming Sprint Nextel and its relationship with dealers and consumers because Sprint is not able to supply dealers with sufficient handsets to satisfy the demand from legitimate consumers.  The availability of iPhones for use on the Sprint network has become particularly problematic since the October 2011 launch of the popular Apple iPhone 4S.  At least partially as a result of Defendants' conduct, consumers have not had a sufficient supply of iPhone 4S phones available for use on the Sprint network.  As a result, Sprint has lost, and continues to lose, potential customers to wireless competitors.

58.     By purchasing insurance and making fraudulent insurance claims for the illegally trafficked Phones in order to receive replacement Phones under false pretenses, Defendants have caused Sprint to incur substantial and unnecessary costs related to its Equipment Replacement Program.

59.     In addition, removing the Phones from the original packaging and altering the Phones irreparably harms Sprint because it deprives Sprint of the means to control the quality of its product.

60.     Moreover, the process of unlocking and reselling a Sprint Phone voids the manufacturer's warranty on the device.  In addition, the unlocked repackaged Sprint Phones are sold without the original manufacturer's warranty documentation.  Both consumers and Sprint are harmed when a Sprint Phone that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair.  Because the warranty is voided on unlocked Phones or Phones sold without warranty documentation, consumers who purchase Sprint Phones from Defendants or their co-conspirators are unable to obtain warranty service in the event they experience problems with their Phones.  As a result, Sprint's reputation suffers further.

61.     In addition, Defendants' improper and unauthorized resale of certain Sprint Phones for use on other networks but still bearing the Sprint Marks may result in calls by confused consumers to Sprint's customer relations department.  Sprint incurs substantial costs associated with such calls and its reputation is further damaged because Sprint may be unable to assist those consumers because Defendants' actions voided the warranties and because Sprint sold the Phones for use on another provider's network.

62.     Defendants' conduct has also resulted in the dilution of the Sprint Marks, substantial harm to Sprint's business reputation and goodwill and a greater likelihood of confusion, mistake, and deception as to the source of origin of Sprint products unlawfully sold by the Defendant and as to the relationship between Sprint and Defendants.

## CIVIL PROCEEDINGS IN OTHER FEDERAL COURTS

63.     Federal courts have recognized that conduct similar to Defendants' conduct is unlawful.

64.     In addition to Sprint, T-Mobile USA, Inc. ("T-Mobile"), TracFone Wireless, Inc. ("TracFone"), Nokia Corporation ("Nokia"), and AT&T Mobility LLC ("AT&T") have each filed multiple lawsuits in numerous federal courts across the country against other defendants similarly engaged in the practice of defrauding legitimate consumers by bulk purchasing wireless telephones and reselling them for profit.  An example of one recently filed complaint by Sprint affiliates is attached hereto as **Exhibit E**.

65.     T-Mobile, AT&T, TracFone, and Nokia, have obtained Final Judgments and Permanent Injunctions in these cases, examples of which are attached hereto as **Composite Exhibit F**.  A defendant who failed to abide by an injunction issued by the United States District Court for the Southern District of Texas pled guilty to criminal contempt, and has been sentenced to serve 57 months in prison.  Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, the Order finding cause to believe the defendant is guilty of criminal contempt, and Judgment of Criminal Contempt are attached hereto as **Composite Exhibit G**.

<u>**COUNT ONE**</u>

**BREACH OF CONTRACT**

66.     Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

67.     By purchasing Sprint Phones, Defendants acknowledged and agreed to the Terms and Conditions included with each Sprint Phone.

68.     By inducing or causing Runners and others to purchase Sprint Phones on Defendants' behalf and for Defendants' benefit, Defendants acknowledged and agreed to the Terms and Conditions included with each Sprint Phone.

69.     The Terms and Conditions constitute a valid binding contract between Sprint and Defendants.

70.     Sprint has performed or tendered performance in full compliance with the Terms and Conditions.

71.     Defendants have breached the Terms and Conditions by, *inter alia*: (a) failing to pay for the monthly service charges; (b) failing to pay the ETF fees; (c) failing to activate the Phones on the Sprint wireless network; (d) reselling the Sprint Phones and related products and services; and (e) using the Phones for a purpose that could damage or adversely affect Sprint.

72.     Sprint has suffered damages as a result of Defendants' breach of the Terms and Conditions.

## COUNT TWO

## COMMON LAW UNFAIR COMPETITION

73.     Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

74.     Defendants' conduct in purchasing and/or inducing others to purchase Sprint Phones and reselling and/or assisting others to resell the Phones overseas for activation on other wireless networks constitute unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in violation of Michigan common law.

75.     Defendants' conduct in selling, inducing others to sell, and/or assisting others to sell Sprint Phones for the purpose of being resold, which undermines Sprint's subsidy program, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in violation of Michigan common law.

76.     Defendants' conduct complained of herein was intentional, malicious, and willful, and has caused substantial harm to Sprint.

17

77.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' common law unfair competition.

### COUNT THREE

**TORTIOUS INTERFERENCE WITH BUSINESS
RELATIONSHIPS AND PROSPECTIVE ADVANTAGE**

78.     Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

79.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized dealers of Sprint Phones.

80.     A business relationship, and an expectancy of business relationships, exists between Sprint and the purchasers and prospective purchasers of its Sprint Phones and wireless service.

81.     A business relationship exists between Sprint and the insurance providers for Sprint's Equipment Replacement Program.

82.     There is a high probability of future economic benefit to Sprint as a result of these current and prospective business relationships.

83.     Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between Sprint, authorized dealers who sell Sprint products, and legitimate Sprint customers or prospective customers.

84.     Specifically, but without limitation, Defendants knew that Sprint has business relationships, and an expectancy of business relationships, with legitimate consumers of Sprint Phones and wireless service.  Defendants interfered with these relationships by engaging in their Bulk Handset Trafficking Scheme and causing, at least in part, Sprint to have an insufficient supply of Sprint Phones available to meet legitimate consumer demand.   Defendants also

18

interfered with the contractual relationships that existed between Sprint and Runners or other purchasers by inducing the Runners or other purchasers to breach their contracts with Sprint.

85.     Defendants also knew that Sprint has business relationships with dealers of Sprint Phones to provide said dealers with sufficient quantities of Sprint Phones for their legitimate consumers' use exclusively on Sprint's wireless network.  Defendants' Bulk Handset Trafficking Scheme has resulted in substantial numbers of Sprint Phones that are never activated on Sprint service and has further caused shortages of available Sprint Phones, thereby substantially harming Sprint and its relationship with dealers because Sprint is unable to supply dealers with sufficient Phones to satisfy the demands from legitimate consumers.

86.     Defendants also knew that Sprint has business relationships with its insurance providers, including Continental Casualty Company and Asurion Protection Services, LLC. Defendants interfered with these relationships by making fraudulent insurance claims on the Phones that were illegally trafficked.

87.     Defendants are intentionally interfering with Sprint's business relationships and prospective advantages through improper means and in violation of the law.

88.     Defendants engaged in the acts of interference set forth herein with a conscious desire to prevent the relationships from occurring or continuing, or Defendants knew that the interference was certain or substantially certain to occur as a result of their conduct.

89.     Sprint has been proximately damaged and continues to be damaged as a result of Defendants' interference.

90.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' tortious interference.

## COUNT FOUR

### CIVIL CONSPIRACY

91.     Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

92.     An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully bulk purchase, traffic, and resell Sprint Phones, which results in breach of contract, unfair competition, tortious interference with business relationships and prospective advantage, unjust enrichment, violation of the federal Computer Fraud and Abuse Act, and insurance fraud, among other things.

93.     Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

94.     Sprint has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

95.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' conspiracy.

## COUNT FIVE

### UNJUST ENRICHMENT

96.     Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

97.     By bulk purchasing the Sprint Phones at less than the manufacturer cost of the Phones for use on wireless networks other than Sprint's network, Defendants have obtained benefits from Sprint which have caused significant harm to Sprint and led to significant financial gain to Defendants through their resale of the bulk purchased Sprint Phones.

98.     Defendants have acquired the benefits voluntarily and with full knowledge of the benefits.

99.     Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Sprint the value of the benefits Defendants acquired.

100.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' unjust enrichment.

**COUNT SIX**

**CONSPIRACY TO INDUCE BREACH OF CONTRACT**

101.     Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

102.     Defendants solicit Runners and others (collectively, "Purchasers") to purchase Sprint Phones in bulk for the benefit of Defendants.

103.     Defendants' active solicitation of Purchasers includes instructing Purchasers to enter into valid contracts with Sprint for the provision of wireless service and subsidized Phones in accordance with the Terms and Conditions.

104.     Defendants' active solicitation of Purchasers also includes instructing and inducing Purchasers to breach their contracts with Sprint by *inter alia*: (a) failing to pay for the monthly service charges; (b) failing to pay the ETF fees; (c) failing to activate the Phones on the Sprint wireless network; (d) reselling the Sprint Phones and related products and services; and (e) using the Phones for a purpose that could damage or adversely affect Sprint.

105.     Defendants have knowledge of the contracts between Sprint and Purchasers, and intended to, and in fact did, and continue to, induce Purchasers to breach their contracts with Sprint.

106.     The breach of the contracts is proximately caused by Defendants' misconduct.

107.     Sprint suffered and continues to suffer damages as a result of the breach of the contracts induced by Defendants.

108.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' conspiracy to induce breach of the contracts.

**COUNT SEVEN**

**COMMON LAW FRAUD**

109.     Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

110.     As part of their Bulk Handset Trafficking Scheme, Defendants regularly and systematically misrepresent to Sprint that the Phones are being purchased for a legitimate purpose, that the Phones would be used by Defendants or other legitimate consumers on Sprint's wireless network, and that they will pay their monthly service charges and ETF, and otherwise perform in accordance with the Terms and Conditions.

111.     When Defendants or their co-conspirators purchase Sprint Phones as part of their Bulk Handset Trafficking Scheme, they do not intend to use the Phones for a legitimate purpose or to activate them on Sprint's wireless network, nor do they intend to pay their monthly service charges or ETF, or otherwise perform in accordance with the Terms and Conditions..

112.     Defendants also misrepresent to Sprint and the insurance companies handling Sprint's Equipment Replacement Program that the Phones were lost, stolen, or damaged in order to make a fraudulent insurance claim on the Phones and thereby obtain additional replacement Phones.

113.     The Phones were not lost, stolen, or damaged, and the insurance claims were deceptive.

114.    Defendants know that they are required to activate the Sprint Phones on the Sprint wireless network, pay the monthly service charges and ETF, and otherwise comply with the Terms and Conditions.  Defendants also know that the Phones were not lost, stolen, or damaged when they make insurance claims on the Phones.

115.    Defendants intended for Sprint to rely on their misrepresentations to allow Defendants to purchase the Phones for improper purposes, and to receive new Phones from the insurance claims.

116.    Sprint's reliance on Defendants' misrepresentations was reasonable under the circumstances.

117.    Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

118.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' fraud.

## COUNT EIGHT

### FRAUDULENT MISREPRESENTATION

119.    Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

120.    As part of their Scheme, Defendants regularly and systematically misrepresent to Sprint that the Phones are being purchased for a legitimate purpose and would be used by Defendants or other legitimate consumers on Sprint's wireless network.

121.    When Defendants or their co-conspirators purchase a Sprint Phone, they do not intend to activate or use the Phone on the Sprint wireless network.

122.    Defendants also misrepresent to Sprint and the insurance companies handling Sprint's Equipment Replacement Program that the Phones were lost, stolen, or damaged in order to place a fraudulent insurance claim on the Phones.

123.    The Phones were not lost, stolen, or damaged, and the insurance claims were deceptive.

124.    Defendants knew that they were required to activate the Sprint Phones on the Sprint wireless network, and knew that the Phones were not lost, stolen, or damaged when they made an insurance claim on the Phones.

125.    Defendants intended for Sprint to rely on these misrepresentations to allow Defendants to purchase the Phones for improper purposes, and to receive new Phones from the insurance claims.

126.    Sprint's reliance on Defendants' misrepresentations was reasonable under the circumstances.

127.    Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

128.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' fraudulent misrepresentations.

## COUNT NINE

### TRAFFICKING IN COMPUTER PASSWORDS
### 18 U.S.C. § 1030(a)(6)

129.    Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

130.    The Sprint Phones that are trafficked by Defendants are loaded with confidential codes that access: (a) Sprint's national telecommunications computer network to make and

receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, the "protected computer networks").  In other words, the Phones act as a gateway to Sprint's protected computer networks.  Sprint protects access to these protected computer networks through, among other things, the confidential codes contained in the Phones.

131.    Through their Bulk Handset Trafficking Scheme, Defendants are knowingly and with the intent to defraud Sprint trafficking in the confidential codes contained in the Phones.

132.    Defendants' transfer of the Phones and confidential codes to others constitutes "trafficking" of the codes as defined in 18 U.S.C. § 1029 in that the codes were transferred, or otherwise disposed of, to others, or Defendants obtained control of the codes with intent to transfer or dispose of them.

133.    Defendants' trafficking of the Phones substantially affects interstate commerce and communication in that the codes contained in the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's protected computer networks are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

134.    Defendants' trafficking of Sprint's codes has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

135.    With respect to loss, Sprint has lost subsidy investments and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer networks, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones and codes, as well as tracking down fraudulently sold Phones.

136. With respect to damage, by infiltrating the Sprint computer and telecommunications network and collecting and disseminating the illegally activated Phones and codes, Defendants have substantially impaired the integrity of Sprint's protected computer networks in an amount in excess of $5,000. Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service.

137. Defendants' activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

138. Defendants' conduct is intentional, malicious and willful.

139. Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because , and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

**COUNT TEN**

**UNAUTHORIZED ACCESS**
**18 U.S.C. § 1030(a)(5)(C)**

140. Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

141. The Sprint Phones that are purchased by the Defendants and their co-conspirators pursuant to their Bulk Handset Trafficking Scheme are loaded with codes that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, the "protected computer networks").

142.     By purchasing the Phones, Defendants necessarily access the Sprint protected computer networks because the Phones are connected to those networks when purchased from Sprint.

143.     Defendants purchase the Phones by misrepresenting to Sprint that the Phones are being purchased for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.   Because Defendants are purchasing the Phones for illegitimate reasons, Defendants' access of Sprint's protected computer networks is not authorized in any way.

144.     Moreover, when Defendants purchase a Sprint Phone from Runners or other purchasers, Defendants carefully examine the Phone, turn it on, and perform various tests to confirm that the Phone had been activated on Sprint's wireless network and that the various electronic code numbers and access numbers loaded on the Phone are correct.   This too constitutes unauthorized access of Sprint's protected computer networks.

145.     By trafficking in activated Sprint Phones, the Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

146.     Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants (or their co-conspirators) were initially permitted to access Sprint's protected computer networks when they originally purchased the Phones from Sprint, but by purchasing the Phones solely to resell them without paying the monthly service charges and ETF fees, Defendants' access of Sprint's protected computer networks exceeds authorized access.

147.     Defendants' access of Sprint's protected computer systems allows them to improperly steal Sprint's subsidy investment in its Phones.

148.    Sprint's protected computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

149.    Defendants' activities substantially affect interstate commerce and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

150.    Defendants' unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

151.    With respect to loss, Sprint has lost subsidy investments in the trafficked Phones and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones.

152.    With respect to damage, by infiltrating the Sprint computers systems and collecting and disseminating the illegally trafficked Phones, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.   Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's subsidy investment in its Phones.

153.    Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

28

154.    Defendants' conduct is intentional, malicious and willful.

155.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because , and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT ELEVEN

### UNAUTHORIZED ACCESS WITH INTENT TO DEFRAUD
### 18 U.S.C. § 1030(a)(4)

156.    Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

157.    The Sprint Phones that are purchased by the Defendants are loaded with codes that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, the "protected computer networks").

158.    By purchasing the Phones, Defendants necessarily access the Sprint protected computer networks because the Phones are connected to those networks when purchased from Sprint.

159.    Defendants purchase the Phones by misrepresenting to Sprint that the Phones are being purchased for a legitimate purpose for use by legitimate consumers on Sprint's computer networks when in fact, they are not.  Because Defendants are purchasing the Phones for illegitimate reasons, Defendants' access of Sprint's protected computer networks is not authorized in any way.

29

160.    Moreover, when Defendants purchase a Sprint Phone from Runners or other purchasers, Defendants carefully examine the Phone, turn it on, and perform various tests to confirm that the Phone had been activated on Sprint's wireless network and that the various electronic code numbers and access numbers loaded on the Phone are correct.  This too constitutes unauthorized access of Sprint's protected computer networks.

161.    By trafficking in activated Sprint Phones, the Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

162.    Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants (or their co-conspirators) were initially permitted to access Sprint's protected computer networks when they originally purchased the Phones from Sprint, but by purchasing the Phones solely to resell them without paying the monthly service charges and ETF fees, Defendants' access of Sprint's protected computer networks exceeds authorized access.

163.    Defendants' access of Sprint's protected computer systems allows them to improperly steal Sprint's subsidy investment in its Phones.

164.    Sprint's protected computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

165.    Defendants'   activities   substantially   affect   interstate   commerce   and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless telecommunications service pursuant to licenses issued by the Federal Communications Commission.

30

166.     Defendants' unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

167.     With respect to loss, Sprint has lost subsidy investments in the trafficked Phones and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones.

168.     With respect to damage, by infiltrating the Sprint computers systems and collecting and disseminating the illegally trafficked Phones, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.   Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's subsidy investment in its Phones.

169.     Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

170.     Defendants' conduct is intentional, fraudulent, malicious and willful.

171.     Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because , and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT TWELVE

### FEDERAL COMMON LAW TRADEMARK INFRINGEMENT
### AND FALSE ADVERTISING
### 15 U.S.C. § 1125 (a)(1)(A) and (B) [§43(a) of the Lanham Act]

172.    Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein.

173.    Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of the Sprint Marks without authorization in connection with its conspiracy to sell and offer for sale certain unlocked, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

174.    Defendants' and/or their co-conspirators' use of the Sprint Marks in connection with the sale of certain unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products, and the relationship between Sprint and Defendants.

175.    Defendants' and/or their co-conspirators' unauthorized use of the Sprint Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Sprint.

176.    Defendants' and/or their co-conspirators' use of the Sprint Marks in connection with certain unlocked, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, constitutes a misappropriation of the distinguishing and identifying Sprint Marks that was created as a result of significant effort and expense.  Defendants' and/or their co-conspirators' use of the Sprint Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or

affiliation with Sprint, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint.

177.    Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Sprint and the reputation and goodwill of Sprint, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint.  Sprint is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

178.    Defendants' use of the Sprint Marks in commercial advertising or promotion misrepresents the nature, characteristics, and/or qualities of their infringing products.

179.    Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and (B).

180.    Sprint is entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

181.    Defendants knew or should have known that Sprint is the exclusive holder of the Sprint Marks and that Defendants had no legal right to use the Sprint Marks on its infringing products.  Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiffs' lost profits, Defendants' profits, and Plaintiffs' attorneys' fees.

## **COUNT THIRTEEN**

### **CONTRIBUTORY TRADEMARK INFRINGEMENT**

182.    Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above as though fully set forth herein

183.    By misappropriating and using the Sprint Marks, Defendants knowingly aided and enabled distributors and/or sellers of its products to market them to members of the general public in a way that infringes the Sprint Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

184.    Defendants' unlawful, unauthorized, and unlicensed sale of certain of the unlocked Sprint Phones has contributed to the creation of express and implied misrepresentations that the Sprint Phones, as sold by Defendants, were created, authorized or approved by Sprint, and include warranties.

185.    Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchase certain Sprint Phones altered by Defendants to believe that they are purchasing handsets approved by Sprint Nextel and containing original warranties.

186.    Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious and willful.

## DEMAND FOR JURY TRIAL

Sprint demands a trial by jury on all triable issues.


WHEREFORE, Plaintiff Sprint Nextel Corporation respectfully requests that this Court enter final judgment and permanent injunctive relief in favor of Sprint and against Defendants, as follows:

(a) awarding Sprint its compensatory, consequential, statutory and special damages including, without limitation, its lost profits, Defendants' profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b) awarding Sprint its reasonable attorneys' fees and costs associated with this action;

(c) granting permanent injunctive relief in favor of Sprint and against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint; and

(d) requiring Defendants, pursuant to the Lanham Act, to deliver to Sprint their entire inventory of phones and products bearing or infringing the Sprint Marks or a confusingly similar copy thereof; and

(e) granting such further relief as this Court deems just and proper.

Respectfully submitted,

By: s/Sonal Hope Mithani
Sonal Hope Mithani (P51984)
Miller, Canfield, Paddock and Stone, P.L.C.
101 N. Main Street, 7th Floor
Ann Arbor, Michigan 48104
Direct (734) 668-7786
Fax (734) 747-7147
mithani@millercanfield.com

-and-

**CARLTON FIELDS, P.A**.
CityPlace Tower
525 Okeechobee Boulevard -- Suite 1200
West Palm Beach, FL 33401
Tel: 561-659-7070
Fax: 561-659-7368
James B. Baldinger
Florida Bar No. 869899
Stacey K. Sutton
Florida Bar No. 289530

December 12, 2011                    Attorneys *for Plaintiff Sprint Nextel Corporation*

19,643,865.1\088888-02304